# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KEITH WEBER ) | Case # 2:10-cv-01990-KJD-RJJ |
| Plaintiff, ) | |
| vs. ) | **VERIFIED PETITION FOR PERMISSION TO PRACTICE IN THIS CASE ONLY BY ATTORNEY NOT ADMITTED TO THE BAR OF THIS COURT AND DESIGNATION OF LOCAL COUNSEL** |
| CLARK COUNTY, NEVADA, et al. ) | |
| Defendant(s). ) | EFFECTIVE JUNE 1, 2004<br>FILING FEE IS $175.00 |

_____Chris Harper_____, Petitioner, respectfully represents to the Court:

1. That Petitioner resides at _____Edmond_____
   (city)
   
   _Oklahoma County_, _Oklahoma_
   (county)            (state)

2. That Petitioner is an attorney at law and a member of the law firm of
   _____Chris Harper, Inc._____ with offices at
   _____2300 W. Danforth Rd., Suite 120_____,
   _Edmond, OK_ (street address) _73012-4341_, _(405) 359-0600_
   (city)                          (zip code)    (area code + telephone number)
   
   charper@chrisharperlaw.com
   *(Email address)*

Paid Amt $ 175.00  Date 10/5/11
Receipt # 6687  Initials [signature]

3. That Petitioner has been retained personally or as a member of the law firm by _____Keith Weber_____ to provide legal representation in connection with
[client(s)]
the above-entitled case now pending before this Court.

4. That since ____10/6/1983____, Petitioner has been and presently is a member
(date)
in good standing of the bar of the highest Court of the State of ____Oklahoma____
(state)
where Petitioner regularly practices law.

5. That Petitioner was admitted to practice before the following United States District Courts, United States Circuit Courts of Appeal, the Supreme Court of the United States and Courts of other States on the dates indicated for each, and that Petitioner is presently a member in good standing of the bars of said Courts.

| Court | Date Admitted | Bar Number |
|---|---|---|
| Tenth Circuit | 5/26/1989 | 10325 |
| U.S.D.C. Western District of Oklahoma | 12/15/1983 | 10325 |
| U.S.D.C. Northern District of Oklahoma | 12/1/1989 | 10325 |
| U.S.D.C. Eastern District of Oklahoma | 4/8/1993 | 10325 |

6. That there are or have been no disciplinary proceedings instituted against Petitioner, nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid disciplinary or disbarment proceedings, except as described in detail below:

See attached.

2

7. Has Petitioner ever been denied admission to the State Bar of Nevada?. (If yes, give particulars of every denied admission):

No.

8. That Petitioner is a member of good standing in the following Bar Associations:

Oklahoma Bar Association

9. Petitioner or any member of Petitioner's firm (or office if firm has offices in more than one city) with which Petitioner is associated has/have filed application(s) to appear as counsel under Local Rule IA 10-2 during the past three (3) years in the following matters:

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied |
|---|---|---|---|
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(If necessary, please attach a statement of additional applications)

10. Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada.

11. Petitioner agrees to comply with the standards of professional conduct required of the members of the bar of this court.

12. Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

That Petitioner respectfully prays that Petitioner be admitted to practice before this Court FOR THE PURPOSES OF THIS CASE ONLY.

_____
Petitioner's Signature

STATE OF    Oklahoma    )
                       )
COUNTY OF   Oklahoma   )

____Chris Harper____, Petitioner, being first duly sworn, deposes and says:

That the foregoing statements are true.

_____
Petitioner's Signature

Subscribed and sworn to before me this

_30_ day of _September_, _2011_

_Tracy K. Barbour_
Notary public or Clerk of Court

[Notary Seal: TRACY K. BARBOUR, NOTARY, #00015648, EXP. 10/22/12, STATE OF OKLAHOMA]

## DESIGNATION OF RESIDENT ATTORNEY ADMITTED TO THE BAR OF THIS COURT AND CONSENT THERETO.

Pursuant to the requirements of the Local Rules of Practice for this Court, the Petitioner believes it to be in the best interests of the client(s) to designate ____Phillip P. Owens II____, Attorney at Law, member of the State of Nevada and previously admitted to practice before the above-entitled Court as associate residence counsel in this action. The address of said designated Nevada counsel is:

2300 W. Danforth Rd., Suite 120
Edmond, OK 73012-4341   405-359-0600

(Street, City, State, Zip Code and Telephone No.)

4

By this designation the Petitioner and undersigned party(ies) agree that this designation constitutes agreement and authorization for the designated resident admitted counsel to sign stipulations binding on all of us.

**APPOINTMENT OF DESIGNATED RESIDENT NEVADA COUNSEL**

The undersigned party(ies) appoints _____Phillip P. Owens II_____ as his/her/their Designated Resident Nevada Counsel in this case.

_____
(Party signature)

_____
(Party signature)

_____
(Party signature)

**CONSENT OF DESIGNEE**

The undersigned hereby consents to serve as associate resident Nevada counsel in this case.

_____   9142
Designated Resident Nevada Counsel's Signature   Bar number

APPROVED:
Dated: this __2nd__ day of __November, 2011__.

_____
UNITED STATES DISTRICT JUDGE

5

Rev 07/06

# OSCN THE OKLAHOMA STATE COURTS NETWORK
www.oscn.net

| Home | Courts | Court Dockets | Legal Research | Calendar | Help |
| Previous Case | Top Of Index | This Point in Index | Citationize | Next Case | Print Only |

Oklahoma Supreme Court Cases

## State ex. rel. Oklahoma Bar Ass'n v. Harper
2000 OK 6
995 P.2d 1143
71 OBJ 400
Case Number: SCBD-4444
Decided: 02/01/2000
Supreme Court of Oklahoma

Cite as: 2000 OK 6, 995 P.2d 1143

STATE OF OKLAHOMA ex rel. Oklahoma Bar Association, Complainant

v.

Charles C. Harper, Respondent.

[995 P.2d 1144]
ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE.

¶0 Complainant, Oklahoma Bar Association, filed formal complaint against attorney alleging violation of Rule 4.2 of Oklahoma Rules of Professional Conduct. After hearing, Professional Responsibility Tribunal recommended dismissal of complaint.

**RESPONDENT EXONERATED;**
**APPLICATION FOR ASSESSMENT OF COSTS DENIED.**

Allen J. Welch, Oklahoma Bar Association, Oklahoma City, Oklahoma, Attorney for Complainant.

Jack S. Dawson, James A. Scimeca, Miller Dollarhide, Oklahoma City, Oklahoma, Attorney for Respondent.

HODGES, J.

### I. OVERVIEW

¶1 Complainant, the Oklahoma Bar Association, alleged one count of misconduct warranting discipline against respondent attorney, Charles C. Harper (Respondent). The complaint alleged that Respondent had violated rule 4.2 of the Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3-A (1991) (prohibition against communications with a person known to be represented by an attorney). Respondent has not been disciplined or has not previously been the subject of a grievance. The Professional Responsibility Tribunal (PRT) found that Respondent had not violated rule 4.2 and recommended dismissal of the complaint.

### II. FACTS

¶2 At the time of the alleged misconduct, Respondent represented Government Employees Insurance Company (GEICO). The representation arose out of an automobile accident involving Bobbie Tenequer (Tenequer), GEICO's insured. The allegations are that Respondent violated rule 4.2 of the ORPC by communicating with Tenequer concerning the accident without first getting the consent of Tenequer's attorney even though he knew that she was represented in the matter.

¶3 The underlying facts are as follows. On December 23, 1997, Tenequer, John McIntosh (Tenequer's boyfriend),

and their [995 P.2d 1145] baby were traveling on a rural road near Ponca City. The vehicle in which they were traveling was owned by Tenequer's father and insured through him by GEICO. The pickup struck some cattle which were in the roadway. It is unclear whether, at the time of the accident, Tenequer or her boyfriend was driving the pickup, but the police report shows that Tenequer was driving.

¶4 McIntosh and the baby were taken to the hospital in Perry, Oklahoma. The baby was uninjured but supposedly had problems sleeping for some time after the accident. McIntosh subsequently had knee surgery. He alleged that the knee injury for which he had surgery was caused by the accident. Tenequer allegedly suffered back or neck pain as a result of the accident and was treated by a chiropractor.

¶5 On January 13, 1998, attorney Kenny Jean (Jean) wrote two letters to GEICO. In the first letter, he identifies John McIntosh and Tenequer as his clients. Jean advised GEICO that he has been retained to represent McIntosh and Tenequer in their claims for benefits under the medical payment provision of the policy and possibly claims under the uninsured motorist provision of the policy. In the second letter, Jean identifies only McIntosh as his client on a personal injury claim for negligence against Tenequer. In the second letter, Jean states: "Investigation has determined that these injuries were proximately caused by the negligent acts, or failures to act, of your insured [Tenequer]."

¶6 On March 4, 1998, Jean sent GEICO a demand letter on behalf of the baby, Marxus. Jean claimed $411.30 on behalf of Marxus for medical bills and $3,000.00 for pain and suffering and offered to settle for $2,500.00. In the letter, Jean made it clear that he was representing interests adverse to Tenequer's when he stated:

> [Y]our insured [Tenequer] is fully responsible for the accident in question, as the driver struck cattle in the roadway. She was obviously driving too fast for conditions, which were darkness, rain and fog and was, therefore, unable to stop her vehicle prior to the impact. It is also clear there is no evidence at all of any contributory or comparative negligence defense available to your insured, as my client was a faultless passenger and performed no improper action. In essence, I have no reservation as to trying this case before a jury of my client's peers for the full amount of damages listed above.

In a letter written on behalf of McIntosh to GEICO on March 18, 1998, Jean made this same statement regarding Tenequer's negligence.

¶7 In March of 1998, GEICO paid Tenequer's claim under the medical payments provision of the policy. Jean averred that the settlement of Tenequer's claim for medical payments left Tenequer with a possible uninsured motorist claim against GEICO and a liability claim against the owner of the cattle. Complainant asserts that Jean still represented Tenequer on these claims.

¶8 GEICO's representative Carl Wimberly interviewed McIntosh in Jean's office in August. At the time, Wimberly asked Jean if he knew how to reach Tenequer. Jean stated that Tenequer had moved and that he did not have her new address or telephone number. Jean stated that when Tenequer contacted him that he would in turn contact Wimberly. At the time of McIntosh's interview, Jean did not make any mention that he still represented Tenequer, neither did he infer anything to the contrary.

¶9 GEICO's claim log notes show that on August 12, 1998, Tenequer called GEICO to obtain the status of her son's claim. At the time, she informed GEICO that she was dismissing Jean as of that day. She was told to have Jean notify GEICO immediately.

¶10 Then on August 19, 1998, believing that Tenequer was no longer represented by an attorney, Wimberly conducted a telephone interview with Tenequer. Tenequer's comments during the interview prompted Wimberly to ask Tenequer if Jean still represented her. Tenequer replied that Jean told her that she did not have a case against the cattle owner, that it was up to her to discover how the cattle got out of the fence, and that Jean had basically done nothing.

¶11 At the end of the interview, Tenequer informed Wimberly that, contrary to her previous statements, McIntosh was actually driving the vehicle at the time of the accident. An entry in GEICO's files on August [995 P.2d 1146] 21, 1998, indicates Wimberly thought Tenequer was not represented by an attorney. Because of Tenequer's change in testimony in which she stated that McIntosh was driving, GEICO contacted Respondent and asked him to take Tenequer's statement under oath.

¶12 In preparation for taking Tenequer's statement, GEICO sent Respondent a copy of McIntosh's statement given

to Wimberly, a copy of Tenequer's statement given to Wimberly, a field report from Wimberly to GEICO, and the claim log notes. These records reflect that Tenequer was no longer represented as of August 21, 1998, at the latest. The respondent arranged to take Tenequer's statement on October 20, 1998, in Lawton, Oklahoma.

¶13 At the beginning of the statement, Respondent asked Tenequer if she would like to have a lawyer present. Tenequer replied that she saw no need to have a lawyer present. She did not mention that she was represented by Jean. During the statement, Respondent asked Tenequer if Jean was still representing her son, Marxus, through her. Tenequer answered that Jean still represented Marxus only on the medical bills and that Marxus was not making a claim against her. Tenequer asked Respondent if she had a claim against the owner of the cattle to which he responded that he did not know but that the GEICO was looking into the question for possible reimbursement of what it had paid out on property damage.

### III. PROCEDURAL HISTORY

¶14 Jean filed a grievance with Complainant. Complainant then filed a complaint alleging that Respondent had violated rule 4.2 of the ORPC by communicating with Tenequer even though he knew that she was represented by an attorney. The PRT held a hearing on the matter. At the hearing, Jean testified that, when Respondent took Tenequer's statement, Jean still represented Tenequer on an uninsured motorist claim. Jean posited that he was investigating the possibility that the cattle were on the road because of a connection with a vehicle, giving Tenequer a possible claim under the uninsured motorist provisions of the policy.

¶15 A transcript of Tenequer's statement under oath was submitted into evidence. It reflects that the subject of Respondent's communication with Tenequer was GEICO's responsibility for liability claims made against Tenequer by McIntosh. Wimberly testified at the hearing that he had "no knowledge that [Jean] supposedly represented [Tenequer]." Likewise, Respondent's uncontradicted testimony was that, at the time he took her statement, he did not know that Jean represented Tenequer. The respondent testified that he believed that it would be a violation of rule 1.7 of the ORPC[1] for Jean to represent both McIntosh, the passenger, and Tenequer, the driver of the vehicle at the time of the accident. The testimony was that it would be highly unusual for the same attorney to represent both the insured driver of a vehicle and the passenger making a claim against the driver. Complainant presented no evidence that Respondent had actual knowledge that Jean represented Tenequer at the time of the hearing.

### IV. ANALYSIS

¶16 This Court's review of the record is *de novo*. [995 P.2d 1147] State ex rel. Oklahoma Bar Ass'n v. Wilkins, 1995 OK 59, ¶12, 898 P.2d 147, 150. Even though this Court is not bound by the PRT's recommendations, they are noted. Before this Court will impose discipline, the complainant must prove the charges by clear and convincing evidence. Id.

¶17 Rule 4.2 of the Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, app. 3-A (1991) provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The comments state:

> The prohibition of communication with a represented person only applies, however, in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that a lawyer had actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. . . .Thus, a lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.

(Emphasis added.) Rule 4.2 has three requirements: (1) a communication, (2) with a person known to be represented by an attorney, (3) on the matter of the representation.

¶18 Complainant advocates that Respondent had actual knowledge that Jean represented Tenequer while at the same time stating that Respondent came to the conclusion that Tenequer was unrepresented based on a series of

miscalculations. Complainant also seeks a construction of rule 4.2 which would negate the requirement of actual knowledge of the representation and advocates that this Court redraft rule 4.2 to require only that a lawyer should have known of the representation. ¶19 We reject Complainant's request to rewrite rule 4.2 to abrogate the requirement that a lawyer's knowledge of representation must be actual. The explicit language of the rule requires actual knowledge of the representation on the matter of the subject of the communication. ORPC, Okla. Stat. tit. 5, ch. 1, app. 3-A, rule 4.2 (1991). Further, the comments leave no question that, without actual knowledge of the representation, there is no violation of rule 4.2. id. at rule 4.2 cmt. Ascribing actual knowledge to a lawyer based on the facts is not the same as applying the rule under circumstances where the lawyer should have known. We refuse to adopt Complainant's proposed construction of rule 4.2 of the ORPC.

¶20 There is no question that Respondent communicated with Tenequer. The inquiry then is (1) whether Respondent's communication with Tenequer was about the subject of the matter on which Jean represented Tenequer, and (2) whether Respondent had actual knowledge that Jean represented Tenequer on the matter. The subject of the communications between Respondent and Tenequer was her liability for McIntosh's injuries and GEICO's responsibility for payment of McIntosh's claim. In her sworn statement, Tenequer said that her son, Marxus, did not have a negligence claim against her, only a claim for medical payments which do not hinge on Tenequer's negligence. Tenequer's claim for medical payments had been settled in March of 1998. Jean alleged that he represented Tenequer on a claim against the cattle owner and on an uninsured motorist claim. Tenequer's uninsured motorist claim was not the subject of the communication. Thus, Respondent did not communicate about a subject in a matter for which Jean represented her. id. at rule 4.2.

¶21 Complainant argues that the subject of the matter on which Jean represented Tenequer was the accident. It would be foreign to most lawyers representing an insurance company that Jean could have represented Tenequer generally regarding the accident as well as the passenger filing a claim against her. If Jean represented McIntosh on his claim against the cattle owner, on his negligence claim against Tenequer, and on his uninsured motorist claim against GEICO, he would necessarily attempt to show not only that the cattle owner was negligent, but also that Tenequer was negligent. On the other hand, in a claim brought by Tenequer against the cattle owner, Jean would attempt [995 P.2d 1148] to show that Tenequer was not negligent, a position inconsistent with Jean's representation of McIntosh. This is illustrated by the fact that Jean twice wrote to GEICO, once on McIntosh's behalf, stating that Tenequer's negligence was the sole cause of the accident. See id. at rules 1.6 and 1.7. Under rule 1.7 of the ORPC, Jean's representation of McIntosh on a negligence claim against Tenequer would appear to be inconsistent with Jean's representation of Tenequer even after disclosure of the conflict and consent by the parties. Thus, the communication at the time of Tenequer's statement could not have been the subject on the matter of Jean's representation of Tenequer.

¶22 Even if the communications in the statement were about a subject in a matter in which Jean represented Tenequer, Respondent had no knowledge of the representation. Both Respondent and Wimberly testified that they did not know that Tenequer was represented by an attorney. The records that Respondent received from GEICO reflected that Tenequer was unrepresented at the time Respondent took her statement. When Respondent informed Tenequer that she could have an attorney present, she mentioned nothing about Jean representing her. When Respondent asked Tenequer if Jean represented her son through her, Respondent made certain that Jean did not represent Tenequer's son on any negligence claim against her, only on the medical payment provision of the policy. At the time of giving the statement, Tenequer was not even aware that McIntosh was pursuing a claim against her for negligence. Thus, it is doubtful that Jean represented Tenequer on McIntosh's claim against her on the negligence issue.

¶23 Complainant asks this Court to impose discipline on Respondent even though it admits that Respondent had concluded that Jean did not represent Tenequer. The miscalculations all revolve around GEICO's knowledge of Jean's representation of Tenequer rather than Respondent's. We find no evidence that Respondent actually knew that Jean represented Tenequer at the time Respondent took her statement.

¶24 Complainant relies on an ethics opinion issued by the American Bar Association which states: "When the represented party declares that counsel has been discharged, (the) sensible course would be confirm whether (the) lawyer had been effectively discharged." ABA Formal Opinion 95-396. We agree that this is the sensible course. In fact, GEICO probably should have confirmed that Tenequer had discharged Jean. This information is not imputed to Respondent for purposes of a rule 4.2 violation. The records GEICO supplied to Respondent reflect that Tenequer was unrepresented at the time Respondent took her statement.

## IV. CONCLUSION

¶25 Complainant has failed to show by clear and convincing evidence that Respondent violated rule 4.2 of the Rules of Professional Conduct. The Complainant's application for costs is denied.

RESPONDENT EXONERATED; APPLICATION FOR ASSESSMENT OF COSTS DENIED.

¶26 ALL JUSTICES CONCUR.

## FOOTNOTES

[1] Rule 1.7 of the ORPC, Okla. Stat. tit. 5, ch.1, app. 3-A, rule 1.7 (1991) provides:

> Rule 1.7. Conflict Of Interest: General Rule
>
> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The comments state:

> An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. . . .If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation.

## Citationizer© Summary of Documents Citing This Document

| Cite | Name | Level |
|---|---|---|
| 2000 10CIR 1272, 230 F.3d 1201, | Weeks v. Independent School Dist. No. I-89 of Oklahoma County, OK., Bd. of Educ. | Cited |
| **Oklahoma Supreme Court Cases** | | |
| Cite | Name | Level |
| 2003 OK 21, 70 P.3d 821, | STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SCROGGS | Discussed |
| 2007 OK 3, 152 P.3d 212, | STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WAGNER | Discussed |

## Citationizer: Table of Authority

| Cite | Name | Level |
|---|---|---|
| **Oklahoma Supreme Court Cases** | | |
| Cite | Name | Level |
| 1995 OK 59, 898 P.2d 147, 66 OBJ 1978, | State ex rel. Oklahoma Bar Assn. v. Wilkins | Discussed |